HERCULES MOTORS CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 92225. Promulgated November 30, 1939.

*H. A. Mihills, C. P. A.,* and *F. E. Gleach, Esq.,* for the petitioner.
*T. F. Callahan, Esq.,* for the respondent.

1000

OPINION.

Van Fossan: The issue is whether or not, under the circumstances here presented, trade acceptances constituted capital assets within the meaning of section 117 (b) of the Revenue Act of 1934.[1] In each instance the determination of the question must rest on the facts of the case. The character of the taxpayer's business, the methods of its operation, the measures required to carry it on, and all acts and transactions incidental to such business must be considered.

Here the petitioner's primary business was the manufacture and sale of motors and motor parts and accessories. In order to sell to Amtorg it became necessary to receive its payment in Amtorg's trade acceptances. Because of the uncertain credit status of both Amtorg and the Russian Government, the price of the articles sold was increased to equalize the difference between the possible proceeds from the sale of the acceptances and their face value. This increased price was reflected in petitioner's income account.

The trade acceptances came into the petitioner's possession as a necessary incident to the sale of its merchandise and were not received, or were intended to be held, as a capital asset. The respondent does not suggest that the petitioner acquired the trade acceptances as an

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

investment. In support of his position that they were capital assets, respondent contends they do not come within the precise language of the statute.

Here the trade acceptances related directly to the sale of the petitioner's products to Amtorg. They had become a usual and regular factor in the petitioner's transactions with that customer and the sales were accomplished largely through the means of such obligations. Their receipt was thus necessary to the normal conduct of the petitioner's business. Their disposition likewise became essential. Petitioner offered them to several potential buyers, finding a customer in J. H. Leader, Inc. Petitioner had sold acceptances to other buyers in other years. Such activities, in our opinion, come within the purview of the statutory phrase "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

The respondent has recently published the opinion of the Chief Counsel, Bureau of Internal Revenue (G. C. M. 21497, C. B. 1939–35–9981) in which he holds:

A bank, mortgage finance company, or a building and loan association which is offering for sale parcels of real estate on which it has been compelled to foreclose is holding property "primarily for sale to customers in the ordinary course of * * * trade or business" within the provisions of section 117 (b) of the Revenue Acts of 1934 and 1936, and the gains or losses incurred in such sales are to be treated as ordinary gains or losses and not as capital gains or losses.

Respondent's position in the present case is entirely inconsistent with the above opinion, which we believe to be sound in law. In our judgment, the sale of negotiable evidences of indebtedness by the petitioner, which had been forced to accept them in order to make its sales of motors, is no more foreign to its business than the sale by a bank of real estate on which it has been obliged to foreclose.

The respondent argues that the foregoing conclusion does violence to the petitioner's accrual basis of accounting. We are unable to follow respondent's line of reasoning. The petitioner included in its income account the full face amount of the invoices and seeks to deduct therefrom appropriate amounts representing losses from the sales of trade acceptances taken as part or full payment for the goods invoiced.

The petitioner sustained a loss of $15,205.22 on property held by it primarily for sale to customers in the ordinary course of its trade or business. Such loss is deductible as an ordinary loss.

*Decision will be entered under Rule 50.*