ESTATE of Harry M. LIGGETT, Deceased; Lucille W. Liggett, Executor; and Lucille W. Liggett, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 4911.

United States Court of Appeals Tenth Circuit.

Nov. 1, 1954.

---

Byron M. Gray, Topeka, Kan., for petitioners.

Walter Akerman, Jr., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky and Robert B. Ross, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This petition for review challenges the correctness of the decision of the Tax Court of the United States denying the right of Harry M. Liggett, now deceased, to deduct from his 1946 income as a bad debt deduction the sum of $47,000 represented by a note, under the provisions of Section 23(k) (1) of the Internal Revenue Code, 26 U.S.C.A.

The facts as found by the Tax Court may be summarized as follows: In February, 1946, Harry M. Liggett organized the Harry M. Liggett Company, a corporation. The company was formed and established to operate four dehydrating plants in the Kaw Valley to process and dehydrate alfalfa. So far as the record shows, all the common stock and preferred stock that was issued was issued to Harry M. Liggett and Lucille W. Liggett, his wife. Whether other stock was issued does not appear, but in any event it is immaterial to the issue presented in this proceeding. Because of drouth conditions in North Central Kansas, two of these plants were relocated in irrigated portions of Nebraska at a relocation cost of $30,000. Prior to the organization of the corporation, the National Bank of Topeka had loaned Harry M. Liggett $115,000 in two separate loans, secured by a mortgage on all his property as well as on the assets of the corporation. The first year's operation of these units was not as successful as anticipated and from February to December, 1946, Harry M. Liggett had loaned the corporation $78,000 on open account. This amount was repaid and is not involved in this litigation. In addition, prior to August 24, 1946, he loaned the company $47,000 upon its promissory note. This is the note in controversy here.

On or about October 14, 1946, there was some discussion between the bank and Liggett with respect to the bank's indebtedness. Mortgage foreclosure proceedings were discussed. The bank agreed that if Liggett would cancel his claim against the company represented

by the $47,000 promissory note it would defer foreclosure proceedings. and make a new loan of $125,000, the proceeds of which were to be used to refund the debts of the company other than the $47,000 note. Such an agreement was executed. Liggett exhibited the cancelled note and the new loan was made. The corporation prospered thereafter and the new loan of $125,000 was repaid.

The Tax Court decided three issues. It held (1) that the advances to the company of $47,000 constituted bona fide debts; (2) that the voluntary cancellation of the note did not result in a bad debt deduction within the meaning of Section (k) (1); and (3) that the voluntary cancellation of the $47,000 note constituted additional capital contribution to the corporation. Finding No. 1 is not seriously challenged and need not be further considered.

■ The Tax Court did not hold, as is contended by petitioners, that a voluntary cancellation of a debt cannot be the basis of a bad debt deduction. All it held was that this voluntary cancellation did not under the facts in this case give rise to such a deduction. We think the law is settled that a creditor may not voluntarily cancel a debt which has value and then claim a deduction because the debt is now valueless.[1] The case of Deeds v. Commissioner, 6 Cir., 47 F.2d 695, upon which petitioners rely, does not. require a contrary conclusion. All that case holds is that the debts in question were deductible as worthless debts, and that their cancellation under the circumstances. was not unreasonable.

The decision then turns upon whether the Tax Court's holding that there was no proof that the $47,000 in notes was worthless prior to cancellation finds support in the record. It is true that the corporation was not prospering at the time of the cancellation. Its balance sheet showed a small deficit of $6,037.89. Among its assets were some producing oil wells which were carried on the company's books at $16,853.28, but whose actual value was $69,477.27. Had they been carried at this sum, there would have been a substantial balance of assets over liabilities. While the bank was contemplating foreclosure of its mortgages, it did not consider the condition of the company hopeless, as is evidenced by its willingness to loan additional. sums to the corporation above the loan it then had. That its confidence in the ultimate success of the corporation was justified is evidenced by the fact that later business conditions improved and, after the sale of some of the dehydrating equipment, the new bank loan was repaid in full. There is strong support in the record that the notes were not cancelled because they were thought to be worthless but rather as the Tax Court found in "consideration for the loan." There is also evidence in the record that the parties had hopes for the successful operation of the company. Mr. Clevenger, who represented the bank, testified that he "foresaw a possibility of future profit." There is much to support the conclusion that the notes in question were cancelled as a part of the refinancing program for the corporation, for the purpose of providing it additional operating capital, and that the parties had hopes in the ultimate success of the corporation and that this overall program was the reason for the cancellation of these notes, rather than that they were worthless.

■ The Commissioner's findings are prima facie correct and we cannot say from the record that the taxpayer has sustained the burden resting upon him to overcome the correctness of these findings.[2] Our affirmance of the Tax Court's conclusion that the notes in ques-

---

1. American Felt Co. v. Burnet, 61 App. D.C. 125, 58 F.2d 530; O'Bryan Bros. v. Commissioner, 6 Cir., 127 F.2d 645.

2. Fowler Brothers & Cox v. Commissioner of Internal Revenue, 6 Cir., 138 F.2d 774; Pottash Brothers v. Burnet, 60 App.D.C. 167, 50 F.2d 317; Golden Cycle Corporation v. Commissioner of Internal Revenue, 10 Cir., 51 F.2d 927; Wilson v. Commissioner of Internal Revenue, 10 Cir., 76 F.2d 476.

tion did not become worthless in 1946 makes it unnecessary to consider its further conclusion that the cancellation of the notes constituted a further capital contribution within the holding of Crean Brothers v. Commissioner of Internal Revenue, 3 Cir., 195 F.2d 257.

Affirmed.